UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

|  |  |  |
|---|---|---|
| Bathurst D. Peachy, | ) | Civil Action No.:_____ 4:24-cv-5296-JD |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | COMPLAINT |
|  | ) |  |
| TransUnion, LLC, | ) | JURY TRIAL DEMANDED |
|  | ) |  |
| Defendant. | ) |  |
| _____ | ) |  |

## COMPLAINT

1. This is an action brought by Plaintiff, Bathurst D. Peachy, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacts business in this division.

## PARTIES

9. Plaintiff, Bathurst D. Peachy, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

2

10. Defendant TransUnion, LLC ("TransUnion") is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file; and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. On June 27, 2023, Plaintiff was involved in an automobile accident, which caused Plaintiff's 2021 Hyundai Tucson to be deemed a "total loss" by his insurance company, Progressive Insurance (hereinafter "Progressive").

16. Progressive contacted Hyundai Finance (hereinafter "Hyundai") and obtained a payoff amount.

17. Thereafter, in July 2023, Plaintiff received a check from Progressive in the amount of $25,000.00.

18. Upon receipt of the check from Progress, Plaintiff contacted Hyundai for the payoff amount and was told the payoff amount was $18,942.23.

19. Before Plaintiff could forward the payoff check to Hyundai, Hyundai contacted him on August 3, 2023, and told him that if he did not make a payment of $371.92 immediately, his credit would be ruined. In order to protect his credit, Plaintiff immediately made the payment of $371.92. At the time he made the payment, Plaintiff was assured by the Hyundai Finance agent that after the payoff was made, he would be refunded the $371.92 payment.

20. On or about August 3, 2023, unbeknownst to Plaintiff, Hyundai sent a payoff letter to Progressive stating the payoff amount was $25,182.52. In its letter, Hyundai stated that upon receipt of $25,181.52 as the full proceeds of the insurance policy covering the Hyundai, Hyundai agreed to release and transfer all of its rights, title, and interest in and to the vehicle to Progressive and that under the lease agreement, the total loss automatically triggered termination of the lease.

21.     Unaware of Hyundai's increased payoff demand, on or about August 19, 2023, Plaintiff sent a check in the amount of $18,942.23 to Hyundai.

22.     On August 23, 2023, Hyundai emailed Plaintiff that his payment of $18,942.23 was processed on August 19, 2023.

23.     Thereafter, Plaintiff received a check in the mail from Hyundai refunding the entire amount of $18,942.23.  However, there was no correspondence or explanation of why the check had been refunded.

24.     Following receipt of the check, Plaintiff contacted Hyundai and was told by a Hyundai representative that Hyundai had made a mistake and that the correct payoff amount was actually $25,000.

25.     In September 2023, Plaintiff received a call from Progressive stating that Hyundai was demanding an additional $127.16 in order for the account to not report as delinquent.

26.     On September 14, 2023, Plaintiff paid the additional $127.16 to Hyundai.

27.     On October 10, 2023, Plaintiff mailed a check to Hyundai in the amount of $25,000.00, which was processed on October 14, 2023.

28.     After receipt of Plaintiff's $25,000 check by Hyundai, Plaintiff was informed that Hyundai was demanding an additional $181.54 to satisfy the lease.  On November 15, 2024, Plaintiff made the $181.54 payment.

29.     On December 16, 2023, Plaintiff's Trans Union credit score dropped 61 points to 631.

30. On or about January 4, 2024, Plaintiff obtained a copy of his Trans Union credit report online. Upon receipt of his Trans Union credit report, Plaintiff discovered that the Hyundai account was reporting inaccurately.

31. On or about January 26, 2024, Plaintiff sent a written dispute letter to Trans Union **("First Dispute")** wherein Plaintiff informed Defendant he had obtained a copy of his credit report and Hyundai Motor Finance account number 2114821549 was reporting incorrectly. Plaintiff specifically informed Defendant the account should be reporting as paid in full with a zero balance. Plaintiff stated the car was totaled in a car accident, his insurance company obtained the payoff and Plaintiff sent in a check for $25,000. Plaintiff included a copy of the check with his First Dispute. Plaintiff requested Defendant remove all late payments and show the balance as zero.

32. Defendant received Plaintiff's First Dispute on February 8, 2024.

33. On or about February 13, 2024, Credit Karma reported Plaintiff's Trans Union credit score dropped 40 points and that the Hyundai Finance account was reporting as 120 Days Late.

34. Plaintiff was extremely upset by the drops in his TransUnion credit score.

35. On or about February 21, 2024, Plaintiff received the results of Defendant's alleged investigation into his dispute. Defendant informed Plaintiff they had investigated and, as a result of that investigation, had updated the Balance; Date Updated; Pay Status; Maximum Delinquency and Rating. Upon review of Defendant's updates, Defendant was reporting an increase in the balance from $2744 to $2764, and not the correct zero balance on the Account.

36. On or about March 6, 2024, Plaintiff sent a second written dispute letter to Trans Union **("Second Dispute")**. In his letter, Plaintiff stated he had received the Investigation Results, but that the Hyundai Motor Finance account was still not correct. Plaintiff again stated the Account should be reporting as paid in full with a zero balance as the car had been totaled in a car accident and, after the insurance company had obtained the payoff amount, a check in the amount of $25,000 had been sent to Hyundai. Plaintiff stated he was enclosing a copy of the check. Plaintiff also stated there was absolutely nothing due on the lease and requested Defendant update the account to show a zero balance.

37. After mailing his Second Dispute, Plaintiff realized he had forgotten to include a copy of the check. Accordingly, on March 9, 2021, Plaintiff sent another copy of his Second Dispute along with a copy of the check.

38. Defendant received Plaintiff's Second Dispute on March 14, 2024.

39. On or about March 28, 2024, Plaintiff received a letter from Defendant stating, "We understand that recently something on your credit report did not seem right to you." With the letter, Defendant provided Plaintiff a copy of his credit report. However, Defendant never responded to Plaintiff's Second Dispute.

40. Upon review, the March 28, 2024, TransUnion credit report was reporting the Account as "Paid, Closed: was Paid as agreed." Additionally, the Account was reporting with a "$0" balance.

41. Defendant failed to make a reasonable investigation into Plaintiff's disputes. From February 8, 2024 – March 14, 2024, Defendant continued to report inaccurate information regarding the Plaintiff.

42. During the time Defendant was reporting the inaccurate Hyundai Account information, Plaintiff's credit report was viewed by Syncb/Sams Club, Syncb/Amazon PLCC, Goldman Sachs Bank USA, Synch/Rooms to Go, Syncb/PPC, Discover Financial Services, Barclays Bank Delaware, Syncb/Syncb, and US Bank.

43. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

44. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

45. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-

SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

46. The Plaintiff adopts the averments and allegations of paragraphs 15 through 45 hereinbefore as if fully set forth herein.

47. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

48. Defendant negligently failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

49. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, loss of credit, loss of credit opportunities, anxiety, worry, fear, loss of sleep, family discord, anger, frustration, physical pain and sickness, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

50. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

51.     Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

52.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 51 hereinbefore as if fully set forth herein.

53.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

54.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

55.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

56.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, loss of credit opportunities, anxiety, worry, fear, loss of sleep, family discord, anger, frustration, physical pain and sickness, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

57.     In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

58.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

59.     Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.    For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com
Attorney for Plaintiff

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
TransUnion, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169